UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

JOHN DOTSON, TONYA DOTSON,
and AMBER DOTSON,

     Plaintiffs,

   v.

DANIEL L. FUNDERBURG, JIM
GORGES, DOUG GIDDINGS, IDAHO
COUNTY, and DOES 1-10,

     Defendants.

Case No. 3:14-CV-00159-EJL-REB

**MEMORANDUM DECISION AND
ORDER**

---

## INTRODUCTION

Pending before the Court in the above-entitled matter is a Motion for
Summary Judgment by Defendants Jim Gorges, Doug Giddings, and Idaho County
("Defendants").  (Dkt. 42.)   The parties have submitted briefing on the motion and
the matter is now ripe for the Court's review.   Having fully reviewed the record
herein, the Court finds that the facts and legal arguments are adequately presented in
the briefs and record.   Accordingly, in the interest of avoiding further delay, and
because the Court conclusively finds that the decisional process would not be
significantly aided by oral argument, the motions shall be decided on the record
before this Court without oral argument.

**ORDER - 1**

For the reasons stated below, the Court enters the following Order granting summary judgment in favor of Defendants on Defendants' federal claims.

## FACTUAL AND PROCEDURAL BACKGROUND

Unless otherwise noted, the following facts are taken from Plaintiff's Amended Complaint (Dkt. 16).   On December 5, 2012, Daniel Funderburg ("Funderburg") was charged with one count of Sexual Battery on a Minor 16 to 17 Years of Age, in violation of I.C. § 18-1508(A)(1)(a).   At the time of the events leading to the arrest, Funderburg was a deputy with Idaho County.   During his employment, Funderburg had a relationship and a son with a woman named Shelby Parks.   (Dkt. 42-2, ¶¶6-7.)   Plaintiff Amber Dotson ("Dotson") spent time with their son, as he was often babysat by Dotson's older sister, Michelle Childers.   (Dkt. 42-2, ¶7.)

Plaintiff first met Funderburg at Ms. Childers' house, and she later obtained Funderburg's phone number when he gave it to her over Facebook in August of 2012.   (Dkt. 45-1, ¶9.)   By the end of that month, Dotson and Funderburg's relationship had become sexual.   At that time, Dotson was 16 years old and Funderburg was 31 years old.

Although Dotson does not contend that the two engaged in sexual intercourse while Funderburg was on duty, she does argue that Funderburg initiated the relationship while on duty.   The parties dispute when the relationship ended, but the last point of contact between the two occurred when Funderburg texted plaintiff, "you need to leave me alone" on November 6, 2012.   (Dkt. 42-2, ¶21.)

In the meantime, Funderburg was on his supervisors' radar for other personal issues.   (Dkt. 45-1, ¶19.)   For instance, the Idaho County Sheriff's office had received complaints about Funderburg constantly being on his phone while on duty.   (*Id.*)   Funderburg also displayed performance issues while on the job, and was working with his supervisor, Sergeant Martinez, to improve.   (Dkt. 42-2, ¶19.)   Funderburg was even downgraded in his performance review in several categories, including for his failure to engage with youth in the community.   (Dkt. 45, p. 4.)   Moreover, Funderburg's supervisors were also aware that Funderburg was displaying signs of depression.   (Dkt. 45-1, ¶19.)   On November 6, 2012, Undersheriff Jim Gorges ("Gorges") paid a visit to Funderburg in order to address Funderburg's depressed behavior.   (*Id.*)   Gorges denies learning of Funderburg's sexual relationship with Dotson at that meeting.   (Dkt. 42-1, p. 4.)   Instead, Gorges alleges Funderburg only confessed to speaking with plaintiff regarding a sexual relationship she had with a boyfriend who was 18 years old.   (*Id.*)   Gorges claims

**ORDER - 3**

Funderburg was fearful that Dotson's mom was upset Funderburg had given her daughter legal advice pertaining to that issue.   (*Id.*)   Gorges further alleges he then told Sheriff Doug Giddings ("Giddings") that a mother may have a complaint against Funderburg for spending too much time with an underage girl.   (*Id.*)

However, Dotson contends that Funderburg confessed to having a sexual relationship with her to Gorges at the November 6, 2012 meeting.   (Dkt. 45-1, ¶21.) Dotson does not contend that Gorges shared this knowledge with Giddings, but claims Gorges told Funderburg he would inform Giddings of the relationship.   (*Id.*) Because there is a genuine issue of material fact regarding the events of this meeting, the court will accept Dotson's version of the facts for purposes of this motion.

The parties agree that Gorges responded in part by offering to speak with Dotson's mother to learn if she wanted to file a complaint.   (Dkt. 45-1, ¶¶22-23.) Gorges then approached Dotson's mother at her place of work, but she did not file a complaint at that time.   (*Id.*)   On December 3, 2012, Giddings learned that the Clearwater County prosecuting attorney received an independent tip that Funderburg had been in a sexual relationship with Dotson.   On that date, Giddings arranged for Funderburg to be put on administrative leave.   (Dkt. 42-2, ¶25.) Funderburg was terminated from his employment at the end of December 2012. (*Id.*)

**ORDER - 4**

On January 10, 2013, Funderburg pleaded guilty to the felony charge of Sexual Battery on a Minor 16 to 17 Years of Age.   Thereafter, on April 25, 2014, Dotson brought the instant suit against the Idaho County Sheriff, Doug Giddings, his Undersheriff, Jim Gorges, and Funderburg's previous employer, Idaho County ("Defendants").   (Dkt. 1.)   In her Amended Complaint, Dotson brings the following claims:

1. Denial of Due Process in her right to bodily integrity in violation of the 14th Amendment to the U.S. Constitution by Funderburg and Gorges;
2. Denial of Due Process in her right to bodily integrity in violation of the 14th Amendment to the U.S. Constitution by Gorges and Giddings for failure to intervene to end the relationship when they had knowledge of the improper relationship;
3. Denial of Due Process in her right to bodily integrity in violation of the 14th Amendment to the U.S. Constitution by Gorges and Giddings for failure to train and supervise Funderburg when they had knowledge of the improper relationship;
4. Municipal liability against Idaho County and Giddings for failure to train and supervise Funderburg and Gorges resulting in a deliberate indifference to her constitutional rights under the U.S. Constitution;
5. Invasion of Privacy in Violation of the 5th Amendment to the U.S. Constitution by Gorges and Giddings by disclosing constitutionally protected personal information without a proper government interest;
6. Conspiracy between Gorges and Funderburg to enter into an agreement to violate her civil rights and that they committed an overt act in furtherance of the conspiracy by attempting to conceal and cover-up Funderburg's crimes; and
7. State negligence claims against Idaho County.

**ORDER - 5**

(*See* Dkt. 16, pp. 8-12; Dkt. 42-1, p. 6.)   Defendants have filed the instant

Motion for Summary Judgment as to Dotson's remaining claims against them.

(Dkt. 42, p. 2.)   The Court finds as follows.

## STANDARD OF REVIEW

Motions for summary judgment are governed by Rule 56 of the Federal Rules

of Civil Procedure.   Rule 56 provides that the court shall grant summary judgment

if the movant shows that there is no genuine dispute as to any material fact and that

the movant is entitled to judgment as a matter of law.

The Supreme Court has made it clear that under Rule 56 summary judgment is

mandated if the non-moving party fails to make a showing sufficient to establish the

existence of an element which is essential to the non-moving party's case and upon

which the non-moving party will bear the burden of proof at trial.   *See Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   If the non-moving party fails to make

such a showing on any essential element, "there can be no 'genuine issue of material

fact,' since a complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial."   *Id*. at 323.

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of

summary judgment, must be both "material" and "genuine."   An issue is "material"

if it affects the outcome of the litigation.   *S.E.C. v. Seaboard Corp*., 677 F.2d 1289, 1293 (9th Cir. 1982).   An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute ... to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co., Inc*., 391 U.S. 253, 289 (1968)).   The Ninth Circuit cases are in accord.   *See, e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund*, 882 F.2d 371, 374 (9th Cir.1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party:

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*Id*. at 374 (citation omitted).

Of course, when applying the above standard, the court must view all of the evidence in the light most favorable to the non-moving party.   *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986); *Hughes v. U.S.*, 953 F.2d 531, 541 (9th Cir.1992).

**ORDER - 7**

## ANALYSIS

### 1.  Motion for Summary Judgment

Defendants' Motion for Summary Judgment seeks dismissal of all claims raised against Jim Gorges, Doug Giddings, and Idaho County in the Amended Complaint.   (Dkt. 42.)   In her response brief, Ms. Dotson has not disputed that Judgment should be entered for Defendants on claims 5 and 6.   To survive summary judgment, Dotson "cannot rest on the pleadings but must show some evidence from which the Court could reasonably infer the critical elements of [her] claim."   *Miller v. Idaho State Patrol*, 252 P.3d 1274, 1288 (Idaho 2011) (citation omitted).   Summary judgment is accordingly granted on Dotson's conspiracy and invasion of privacy claims.

### 2.  42 U.S.C. § 1983 Claims

Congress has created a cause of action against private individuals who, while acting under color of law, violate the constitutional rights of private citizens. Section 1983 provides, in pertinent part:

> Every person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivations of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured[.]

42 U.S.C. § 1983.   "Section 1983 does not create any substantive rights, but is instead a vehicle by which plaintiffs can bring federal constitutional and statutory

challenges to actions by state and local officials." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (citing *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 978 (9th Cir. 2004)).   "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Id*. (citation omitted).

To establish a prima facie case under 42 U.S.C. § 1983, Plaintiffs "must adduce proof of two elements: (1) the action occurred 'under color of law' and (2) the action resulted in a deprivation of a constitutional right or a federal statutory right."   *Souders v. Lucero*, 196 F.3d 1040, 1043 (9th Cir.1999) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)).

The parties in this case dispute whether Funderburg acted under color of law when violating Plaintiff's constitutional right to bodily integrity.   For purposes of this motion, the Court will assume Funderburg acted under color of law, and that Funderburg violated Dotson's constitutional right to bodily integrity.1   Even so, however, there can be no liability for the remaining Defendants under 42 U.S.C. § 1983 without evidence that their own actions deprived Dotson of a constitutional or a federal statutory right.

---

1  Dotson has obtained a default judgment against Funderburg.   (Dkt. 27.)   Her claims against Funderburg are not at issue for purposes of the instant motion.

**ORDER - 9**

**A. Failure to Intervene in Violation of the 14th Amendment to the U.S. Constitution**

The Due Process Clause to the Fourteenth Amendment "does not impose a duty on the state to protect individuals from third parties." *Henry A. v. Willden*, 678 F.3d 991, 998 (9th Cir. 2012) (citing *Patel v. Kent Sch. Dist.,* 648 F.3d 965, 971 (9th Cir.2011)).   The Ninth Circuit, however, has recognized the two general exceptions: (1) the "special relationship" doctrine; and (2) the "state-created danger" doctrine.  *Id.*   Dotson here has only raised a claim under the "state-created danger" doctrine, which arises where the state officials took affirmative actions that "create[d] or expose[d] an individual to a danger which he or she would not have otherwise faced."   *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006) (citing *DeShaney v. Winnebago County Dep't of Soc. Servs.,* 489 U.S. 189, 197, 201 (1989)). "To determine whether an official affirmatively placed an individual in danger, [the Court] ask[s]: (1) whether any affirmative actions of the official placed the individual in danger [s]he otherwise would not have faced; (2) whether the danger was known or obvious; and (3) whether the officer acted with deliberate indifference to that danger."   *Willden*, 678 F.3d at 1002.

Dotson contends Defendants' actions meet all the elements of the "state-created danger" exception.   Dotson alleges Defendants affirmatively placed her in a danger which she would not have otherwise faced by requiring Funderburg

**ORDER - 10**

to interact with youth in the community as part of his official duty.   Dotson further argues Funderburg's signs of depression constituted a mental and emotional condition that posed an obvious danger to the community.   Finally, Dotson claims Defendants acted with deliberate indifference to this danger by continuing to require Funderburg to interact with community youth, despite his known mental and emotional condition.

Defendants counter that the "state-created danger" doctrine applies only when the state took an affirmative act to put the plaintiff in risk of danger she would not have otherwise faced.   Defendants claim that no affirmative acts taken by Gorges or Giddings caused Funderburg to engage in sexual relations with Dotson. Defendants further contend that there was no known or obvious danger that would require intervention.   Specifically, Defendants highlight there is no evidence Funderburg or other officers previously engaged in any inappropriate behavior when interacting with community youth.   Finally, Defendants claim Dotson's contention that Funderburg posed a general danger to community youth is insufficient to establish liability, and that Dotson was not a foreseeable victim of Funderburg's illegal conduct.   Therefore, Defendants conclude there is not enough evidence to support a finding of deliberate indifference.

**ORDER - 11**

The Ninth Circuit has held that for purposes of the state-created danger
exception, "deliberate indifference requires a culpable mental state," and thus, "[t]he
state actor must recognize an unreasonable risk and actually intend to expose the
plaintiff to such risks without regard to the consequences to the plaintiff."   *Patel v.
Kent Sch. Dist.,* 648 F.3d at 974 (citation and internal quotation omitted).   The
Ninth Circuit has allowed questions of deliberate indifference to proceed to trial, but
has emphasized that these types of cases are highly fact-specific.   *Id.* at 974-75.   In
cases where the deliberate indifference inquiry has survived summary judgment, the
facts have involved a state actor's affirmative action directing danger toward the
particular plaintiff at hand.   *See, e.g.*, *Penilla v. City of Huntington Park,* 115 F.3d
707 (9th Cir.1997) (two police officers' affirmative actions placed plaintiff in a more
dangerous position than the one they found him in when they found plaintiff to be in
need of medical attention, moved him inside his house, locked the door, and left);
*Kennedy v. City of Ridgefield*, 439 F.3d (police officer affirmatively created danger
by notifying Michael Burns—a person with known violent tendencies—that
plaintiff had reported him for molesting plaintiff's daughter, resulting in Mr. Burns
shooting and killing plaintiff's husband, and shooting and severely wounding
plaintiff).

**ORDER - 12**

By contrast, the deliberate indifference inquiry has not survived summary judgment where the facts involved a state actor's affirmative action directing danger to the public at large.   *See, e.g.*, *Ketchum v. County of Alameda*, 811 F.2d 1243 (9th Cir. 1987) (as a member of the general public, plaintiff had no constitutional right to be protected by county where she was raped by inmate who escaped from a minimum security facility); *Martinez v. State of Cal.*, 444 U.S. 277 (1980) (15-year-old decedent had no constitutional right to be protected by state officials from sex-offender parolee, even though state officials knew it was likely parolee would commit another violent crime).   Thus, the state-created danger exception requires not just the state actor's failure to act, but also "some contact or connection with the injured party that creates a causal connection between the state actor's conduct and the increased danger."   *Schmidt v. Hoover*, 2009 WL 1011715, at *7 (N.D. Cal. 2009) (citation omitted).

Here, the state-created danger exception does not apply.   Dotson contends Defendants affirmatively placed her in danger by encouraging Funderburg to interact with community youth despite his clear signs of depression.   The facts alleged do not establish that Defendants had sufficient contact with Dotson to create the necessary causal connection between Defendants' conduct and the alleged increased danger caused by encouraging deputies to interact with community youth.

**ORDER - 13**

*Schmidt*, 2009 WL 1011715, at *8.   The Ninth Circuit's application of the state-created danger exception supports the conclusion that there must be "affirmative action by the state actor directed toward the particular plaintiff who is suing under § 1983—not just inaction that generally affects the public at large (or even a particular segment of the public)."   *Id.*

Here, Dotson does not allege that Defendants had any knowledge of Funderburg and Dotson's relationship until after it had terminated.2   Moreover, Dotson does not allege a history of deputies engaging in illegal sexual activity with minors as a result of either depression or of being encouraged to interact with youth in the community.   *Flores v. County of Los Angeles*, 758 F.3d 1154, 1156 (9th Cir. 2014).   The facts alleged are insufficient to establish that Defendants affirmatively placed Dotson in danger with deliberate indifference to that danger, thereby depriving Dotson of her constitutional rights.   Thus, the facts do not establish that the state had a duty to protect Dotson as a result of a state-created danger.   Based on the foregoing, summary judgment is granted on this claim.

---

2  Dotson argues Defendants should have discovered Funderburg was using his cell phone to exchange sexually explicit texts with a minor throughout the day and while on duty. (Dkt. 45-1, ¶35). The Court has been unable to locate, and Dotson fails to cite, any case imposing liability on an official for failure to intervene under § 1983 for that official's failure to monitor a third-party's private interactions, such as those over a phone.

### B. Failure to Train and Supervise with Supervisory Liability Against Giddings and Gorges

In order to hold Giddings and Gorges liable for failure to train and supervise under 42 U.S.C. § 1983, Dotson must establish that Defendants were "deliberately indifferent to the need to train subordinates, and the lack of training actually caused the constitutional harm or deprivation of rights."   *Id.* at 1158-59 (9th Cir. 2014) (citing *Connick v. Thompson*, 563 U.S. 51, 58 (2011)).   There are no material issues of fact to establish that any lack of supervision of Funderburg, after Gorges became aware of Dotson's existence, caused a violation of Dotson's constitutional rights. *See Snyder v. City and County of San Francisco*, 288 Fed.Appx. 346 (9th Cir. 2008) (summary judgment appropriate where plaintiffs failed to establish causal link between defendant's supervisory actions and plaintiff's injuries).   Even assuming Funderburg disclosed to Gorges the full nature of his relationship with Dotson at the November 6, 2012 meeting, and even assuming Gorges tried to hide that information for Funderburg, Dotson's alleged constitutional violation had already occurred. Thus, Dotson's failure to intervene claim fails for lack of causation.

Similarly, there are no material issues of fact to establish that any lack of supervision of Funderburg, before Giddings and Gorges became aware of Dotson's existence, caused a violation of Dotson's constitutional rights.   *Van Ort v. Estate of*

*Stanewich*, 92 F.3d 831 (9th Cir. 1996) (that deputy's disciplinary record displayed history of unwarranted violence in making arrests was not enough to establish county liability under § 1983).   Here, Funderburg's performance issues were being worked on with Sgt. Martinez, and Funderburg's signs of depression due to his personal problems could not have led Gorges or Giddings to foresee that Funderburg would engage in sexual relations with a minor.   *Id.* at 837.

Thus, even viewing the evidence in the light most favorable to the non-moving party, the facts are insufficient to support the finding that Defendants were deliberately indifferent to the need to train Funderburg, or that any lack of training actually caused the constitutional harm to Dotson.

Because Dotson cannot establish deliberate indifference with respect to either her failure to intervene or failure to train claims, her due process claims against Giddings and Gorges must fail.

### C. Failure to Train and Supervise Municipal Liability of Idaho County

Liability of governmental entities and supervisors in their official capacities under 42 U.S.C. § 1983, "is limited to deprivations of federally protected rights caused by action taken 'pursuant to official municipal policy of some nature.'" *Pembaur v. City of Cincinnati*, 475 U.S. 469, 471 (1986) (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978)).   Because the theory of

**ORDER - 16**

*respondeat superior* precludes a municipality itself from being held vicariously

liable for the acts of its employees, the plaintiff must establish "a direct causal link

between a municipal policy or custom and the alleged constitutional deprivation."

*City of Canton v. Harris*, 489 U.S. 378, 385 (1989).   Ultimately, the discretionary

actions of municipal employees, even if unconstitutional, generally do not generate

municipal liability under 1983.   *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir.

1992).

      As Dotson notes, a plaintiff may establish municipal liability under § 1983 in

one of three ways.   *Id.* at 1346-47.   First, a plaintiff may establish that the

municipal employee committed the constitutional violation pursuant to a policy or

longstanding custom of the local government entity ("official policy theory").   *Id.*

at 1346.   Second, a plaintiff may prove the municipal employee who committed the

constitutional violation was an official with final policymaking authority

("policymaker theory").   *Id.*   Third, a plaintiff may establish that an official with

final policy-making authority ratified a subordinate's unconstitutional action

("ratification").   *Id.*   Plaintiff alleges that all three avenues of municipal liability

apply here.   (Dkt. 45, p. 12.)

**ORDER - 17**

1. *Official Policy Theory*

Dotson first contends the Idaho County Sheriff's Office had a formal policy requiring all deputies to spend time with community youth, and alleges the County failed to provide adequate training or supervision of Funderburg's execution of that policy.   (*Id.*)   Thus, Dotson alleges, the implementation of the policy caused Funderburg to commit sexual battery against Dotson, a community youth.   (*Id.*)

With regards to the official policy theory, the Supreme Court has concluded a plaintiff must show that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."   *Canton*, 489 U.S. at 390.   "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."   *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 410 (1997).

While Dotson has established Giddings was aware of Funderburg's performance and depression issues, there is no evidence the sexual battery of a minor was a known or obvious consequence of the county policy requiring interaction with youth.   In *Flores v. County of Los Angeles*, the Ninth Circuit

**ORDER - 18**

determined there is no basis to support a conclusion that the "unconstitutional consequences of failing to train police officers not to commit sexual assault are so patently obvious" as to show that the County or the Sheriff acted with deliberate indifference. 758 F.3d at 1160. *See also Pauls v. Green*, 816 F.Supp.2d 961, 971 (D. Idaho 2011) ("many courts have held that no training is required to teach employees *not* to commit sexual assaults"); *Doe v. Dickenson*, 615 F.Supp.2d 1002, 1009 (D. Ariz. 2009) ("a municipality is not deliberately indifferent in failing to train law enforcement officers to not sexually assault those with whom they come into contact."). Dotson has thus failed to establish a genuine issue of material fact as to whether the County's policy of encouraging deputies to interact with community youth, without further supervision or training on relationship barriers with minors, constituted deliberate indifference. Thus, Dotson has failed to meet the requirements to establish § 1983 municipal liability under the "official policy theory."

   2. *Policymaker Theory*

       Alternatively, Dotson alleges Giddings and Gorges were policymakers with respect to the training, supervision, and discipline of deputies within the Idaho County Sheriff's Office, and that Giddings and Gorges made deliberate choices with respect to the challenged training, supervision, and discipline of Funderburg. (Dkt.

45, p. 14.)   Dotson further contends that because Giddings and Gorges did not direct Funderburg's counseling, fit for duty evaluation, enhanced supervision, or termination, Giddings and Gorges opened the door to municipal liability for failure to train and supervise as Idaho County policymakers.   (*Id.* at 13-15.)

While a single decision by a policymaker may constitute an act of official government policy for purposes of § 1983 municipal liability, not every decision by municipal officers subjects the municipality to liability.   *Pembaur*, 475 U.S. at 481. "The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable."   *Id.* at 481-83 (internal citation omitted).   Thus, the Supreme Court has held municipal liability under § 1983 attaches only where the official responsible for establishing final policy with respect to the subject matter in question makes a deliberate choice from among various alternatives.   *Id.* at 483.   In *Pembaur*, the Court found § 1983 municipal liability attached under the policymaker theory where the county prosecutor violated plaintiff's Fourth Amendment rights by directing officers to break down plaintiff's office door and enter plaintiff's office. *Id.* at 484-85.   The Court highlighted, however, a contrasting example that applies

here.   In *Pembaur*, the Court pointed out that where an official's discretionary decisions are constrained by policies not of that official's making—such as a Sheriff exercising discretion to hire and fire employees as per an employment policy created by a board or commission—only the board or commission could be the policymaker who opens the door to § 1983 municipal liability.   *Id.* at 483 n. 12.   In that example, the Sheriff's exercise of discretion—even if unconstitutional—would not expose the County to liability if the policy set by the board was otherwise constitutional.   *Id.*

Dotson has not alleged that the employment policy itself was unconstitutional.   As discussed above, the policy of encouraging deputies to interact with community youth—even absent further training on relationship barriers with minors—was not an unconstitutional policy.   Thus, Sheriff Giddings's exercise of discretion in allowing Funderburg to interact with youth absent further training and supervision does not expose the County to liability for the constitutional policy.

Moreover, even if negligent hiring or supervision is proscribed under *Monell*, such negligence still must be the proximate cause of the injuries suffered in order to establish municipal liability.   *Van Ort*, 92 F.3d at 837.   As Funderburg admitted to being fully aware that his relationship with Dotson was wrong, there is no reason to

**ORDER - 21**

believe that any additional training or supervision of Funderburg would have prevented the constitutional violation.   (Dkt. 45-7, ¶14.)   Thus, even if a jury were to find that Giddings and Gorges were policymakers with respect to the training, supervision, and discipline of deputies within the Idaho County Sheriff's Office, and that Giddings and Gorges made deliberate choices with respect to the challenged training, supervision, and discipline of Funderbug, Dotson fails to establish that Giddings's discretion proximately caused the constitutional violation.

3. *Ratification*

Finally, Dotson claims municipal liability under § 1983 through Giddings and Gorges's alleged ratification of Funderburg's actions.   Under the ratification doctrine, "[i]f the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final."   *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

In order for § 1983 liability to attach to the municipality, however, "the plaintiff must show that the triggering decision was the product of a 'conscious, affirmative choice' to ratify the conduct in question."   *Haugen v. Brosseau*, 351 F.3d 372, 393 (9th Cir. 2003) *overruled on other grounds by Brosseau v. Haugen*, 543 U.S. 194 (2004) (quoting *Gillette*, 979 F.2d at 1347).

**ORDER - 22**

Here, Dotson has made no such showing.   Dotson has provided no evidence that Giddings or Gorges knew of Funderburg's actions until after the constitutional violations ceased.   *See Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999). Instead, Dotson alleges that Giddings and Gorges ratified Funderburg's actions because (1) there existed extreme facts in the case, and (2) their approval of Funderburg's actions was based upon an inadequate investigation containing glaring deficiencies, showing a reckless disregard for the constitutional rights of Dotson. (Dkt. 45, p. 15.)

As to Dotson's first contention of "extreme facts," the Court has failed to locate, and Dotson fails to cite, any authority that allows a finding of "extreme facts" to supersede the ratification requirement that the policymaking official had knowledge of the constitutional violation.   Even assuming that Giddings's failure to recognize Funderburg's illegal relationship constituted an "extreme factual situation," Dotson never contends that Giddings made the "conscious, affirmative choice" to allow that affair to continue.   *Haugen*, 351 F.3d at 393.   In fact, Dotson does not even contend that Giddings or Gorges had any knowledge of the affair until after it had ended.   Thus, even if there is an extreme factual situation as Dotson alleges, the required criteria for ratification are not met.

**ORDER - 23**

Dotson also fails to establish ratification on her second theory that Giddings and Gorges approved of Funderburg's actions through an inadequate investigation that contained glaring deficiencies.   The Ninth Circuit has found municipal liability attaches through ratification where a policymaker's "grossly inadequate investigation" contained "glaring deficiencies."   *Fuller v. City of Oakland*, 47 F.3d 1522, 1535 (9th Cir. 1995).   In *Fuller*, a former police officer filed suit against the City of Oakland under § 1983 for its failure to properly investigate her complaints of sexual harassment against her fellow officers.   *Id.* at 1525.   The investigation at issue took place after the plaintiff reported being the victim of sexual harassment, and contained such glaring deficiencies as: investigative delays; the failure to credit the testimony of witnesses supporting the plaintiff; an attempt to close the investigation without even speaking with the alleged perpetrator; and one-sided resolution of all factual disputes.   *Id.* at 1535.   The Ninth Circuit concluded there was sufficient evidence that the police chief ratified the plaintiff's constitutional violation through his approval of the deficient investigation into the plaintiff's complaints.   *Id.*

This case is plainly distinguishable from *Fuller*.   Unlike in *Fuller*, where the defendants had knowledge of the alleged violation and then failed to properly investigate the complaint, here there was never any complaint for Defendants to

**ORDER - 24**

investigate.   *Morrison v. Bd. of Trs.*, 529 F.Supp.2d 807, 825 (S.D. Ohio 2007) ("[d]efendants cannot be said to have a policy ratifying unconstitutional conduct by failing to properly investigate a complaint when no complaint was made.").   Even assuming Gorges learned of the relationship at the November 6, 2012 meeting, Giddings placed Funderburg on administrative leave and shortly thereafter launched an independent investigation.   (Dkt. 42-3, ¶10.)   Further, Dotson does not present any evidence that the resulting investigation was deficient.   Thus, Dotson has failed to establish a material issue of fact as to whether Giddings and Gorges conducted a "grossly inadequate investigation" containing "glaring deficiencies."   Dotson cannot establish municipal liability under the ratification doctrine.

Viewing the evidence in the light most favorable to Dotson, the Court concludes Dotson has failed to raise a genuine issue of material fact as to whether the County or Giddings, in his official capacity, were deliberately indifferent in training or supervising Funderburg.   The Court therefore must grant Defendants' motion for summary judgment on Dotson's § 1983 claims against the municipality. In issuing this Order, the Court does not seek to minimize Dotson's misfortune or the abuse she suffered.   While the Court deeply sympathizes with Dotson and her family, liability cannot be established as a matter of law under the facts alleged here.

**ORDER - 25**

### D. State Law Claims

Absent any federal claims to support further jurisdiction over this action, the Court declines to exercise ancillary jurisdiction over Dotson's state law claims. Where, as here, the Court has determined prior to trial that all federal claims shall be dismissed, "the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Acri v. Varian Associates*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)).   Thus, in accordance with the direction provided by case law, and consistent with 28 U.S.C. § 1367(c)(3), the Court declines to exercise its discretion to hear the state law claims and will dismiss the claims without prejudice to the Plaintiffs' right to refile them in state court.   For these reasons, the Court will not address the negligence claims against Idaho County.

## ORDER

Having carefully considered the filings of all the parties and entire record in this case, and for the reasons stated herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Dkt. 42) is **GRANTED** and Plaintiff Amber Dotson's federal claims against Jim Gorges, Doug Giddings and Idaho County are dismissed in their entirety, with prejudice.

Dated: **June 10, 2016**

Honorable Edward J. Lodge
United States District Judge